# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**GARY J. BOGGS,**

    Plaintiff,

  v.

**MICHAEL J. ASTRUE**
**Commissioner of Social Security,**

    Defendant.

**CIVIL ACTION NO. 2:12-CV-25**
**(Judge Bailey)**

## ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT & RECOMMENDATION

## I.    Procedural History

The plaintiff, Gary J. Boggs, filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act on April 18, 2008. In the applications, the plaintiff alleged disability since April 19, 2006, when the plaintiff stopped working after his finger was crushed at work [Tr. 86]. The plaintiff alleged in his applications that he was disabled due to mental problems, high blood pressure, severe hives, chronic pain in the right shoulder, hands, knees, ankles, back, neck, elbows, wrists and hands, hemophilia, and carpal tunnel syndrome [Tr. 57].

The Social Security Administration denied the plaintiff's application initially on July 9, 2008 [Tr. 57–58] and on reconsideration on December 11, 2008 [Tr. 53–55]. The plaintiff requested a hearing, and a hearing was held on April 15, 2010 before Administrative Law Judge ("ALJ") Karl Alexander [Tr. 20]. The plaintiff, represented by counsel, testified on his own behalf, as did Vocational Expert ("VE") Eugene A. Czuczman [Tr. 20]. On August 24, 2010, the ALJ issued a decision finding that the plaintiff suffers from severe impairments

as the result of diffuse arthralgias of unclear etiology; minimal degenerative changes of the cervical and lumbar spine; mild degenerative changes of the right AC joint; mild hereditary hemophilia; complaints of shortness of breath with normal spirometry; major depressive disorder; somatoform disorder, not otherwise specified; anxiety disorder; personality disorder, not otherwise specified; and alcohol dependence in supposed remission [Tr. 22]. The decision found that the plaintiff is not under a disability, as defined in the Social Security Act [Tr. 20–39]. While the ALJ found that the plaintiff is unable to perform any past relevant work, he found that the plaintiff retains the residual functional capacity to perform the exertional demands of medium work, or work which requires maximum lifting of 50 pounds and frequent lifting 25 pounds. C.F.R. § 404.1567(c). It also includes the requirements of light and sedentary jobs, some of which are performed while standing, and those performed in the seated position often require the worker to operate hand or leg controls. C.F.R. § 404.1567(b). In addition, the ALJ found that the plaintiff has some exertional and non-exertional limitations. The Appeals Council denied the plaintiff's request for review [Tr. 9–11], thus making the ALJ's decision the final decision of the Commissioner.

Thereafter, the plaintiff filed the present civil action pursuant to 42 U.S.C. § 405(g), seeking judicial review of an adverse decision by the defendant, Commissioner of Social Security. The case was referred to United States Magistrate Judge David J. Joel for submission of proposed findings of fact and recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Both the plaintiff and the defendant filed motions for summary judgment [Docs. 11, 14]. On August 17, 2012 the magistrate judge entered a report and recommendation, recommending that the defendant's motion for summary judgment be

granted, that the plaintiff's motion for summary judgment be denied, and that this case be stricken from the active docket of this Court [Doc. 16].  The plaintiff filed timely objections to the report [Doc. 17].

## II.     Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a *de novo* review of any portion of the magistrate judge's recommendation to which objection is timely made.  As to those portions of a recommendation to which no objection is made, a magistrate judge's findings and recommendation will be upheld unless they are "clearly erroneous." *See* **Webb v. Califano**, 458 F. Supp. 825 (E.D. Cal. 1979).  Because the plaintiff filed objections, this Court will undertake a *de novo* review as to those portions of the report and recommendation to which objections were made.

An ALJ's findings will be upheld if supported by substantial evidence. *See* **Milburn Colliery Co. v. Hicks**, 138 F. 3d 524, 528 (4th Cir. 1998).  Substantial evidence is that which a "'reasonable mind might accept as adequate to support a conclusion." **Hays v. Sullivan**, 907 F. 2d 1453, 1456 (4th Cir. 1990) (quoting **Richardson v. Perales**, 402 U.S. 389, 401 (1971)).  Further, the "possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." **Sec'y of Labor v. Mutual Mining, Inc.**, 80 F. 3d 110, 113 (4th Cir. 1996) (quoting **Consolo v. Fed. Mar. Comm'n**, 383 U.S. 607, 620 (1966)).

## III.    Discussion

In his motion for summary judgment, the plaintiff contends that the Commissioner's decision is not supported by substantial evidence.  Specifically, the plaintiff argues that (1)

the ALJ did not sufficiently consider the plaintiff's carpal tunnel syndrome; (2) the ALJ improperly relied on jobs that did not fit the ALJ's hypothetical RFC and improperly relied on the vocational expert's ("VE") testimony; (3) the ALJ abused his discretion in failing to call a medical expert; and (4) the Appeals Council erred in failing to remand the claim for new and material evidence.

Magistrate Judge Joel issued a report and recommendation, in which he held that (1) substantial evidence supports the ALJ's consideration of the plaintiff's carpal tunnel syndrome; (2) substantial evidence support's the ALJ's reliance on the VE's testimony; (3) the ALJ did not abuse his discretion by not calling a medical expert; and (4) the Appeals Council did not err in deciding not to remand the plaintiff's case on the basis of the Functional Capacity Evaluation ordered by Dr. Given.

The plaintiff objects to each of the findings in the R&R. The Court is persuaded by the plaintiff's fourth argument and believes that the objective evidence provided in the residual functional capacity evaluation completed after the Administrative Law Judge's initial determination calls into doubt the decision grounded on prior medical reports.

### A. Appeals Council

The plaintiff's fourth objection is that the Appeals Council erred in failing to remand the claim for new and material evidence, the functional capacity evaluation ("FCE"). The plaintiff argues that although the FCE took place three months after the ALJ decision, it lends corroborative objective support to Dr. Given's functional assessment [Doc. 11-1 at 14] and the case should be remanded for administrative findings of fact. This Court agrees with the plaintiff.

After the ALJ's decision but before the action of the Appeals Council, the plaintiff

underwent a Functional Capacity Evaluation at the request of Dr. Doug Given and conducted by Kevin C. Boring, MPT [Tr. 630–46]. The evaluation notes that during the examination, the plaintiff's ability to pinch was below average for both hands [Tr. 633], he was unable to complete the grip strength test due to physical discomfort [Tr. 634], and he had carpal tunnel tenderness at the wrist [Tr. 637]. Testing for carpal tunnel syndrome gave a positive result using the Phalen test but a negative result using the Tinel test at the plaintiff's wrist and elbow [Tr. 638]. The doctor stated that his clinical observations and the overall test findings "suggest the presence of full physical effort" by the plaintiff [Tr. 643].

This record was among the records submitted to the Appeals Council. The Notice of Appeals Council Action dated February 7, 2012, states that the Appeals Council considered the additional evidence but "found that this information does not provide a basis for changing the Administrative Law Judge's decision" [Tr. 10]. The Notice makes no additional findings. The magistrate judge found that the report did not relate to the period on or before the date of the ALJ's decision.

The Appeals Council must consider additional evidence that was not submitted to the ALJ when the evidence is (1) new, (2) material, and (3) relates to the period on or before the date of the ALJ's decision. **Wilkins v. Sec'y, Dep't of Health & Human Servs.**, 953 F. 2d 93, 95–96 (4th Cir. 1991). "New evidence is evidence which is not duplicative or cumulative. Evidence is 'material' if there is a reasonable possibility that it would have changed the outcome." **Id.** at 96. Evidence relates to the period on or before the date of the ALJ's decision if it provides evidence of a plaintiff's impairments at the time of the decision. See **Johnson v. Barnhart**, 434 F. 3d 650, 655–56 (4th Cir. 2005).

If the Appeals Council determines evidence is new and material, but "upon consideration . . . finds the ALJ's action, findings, or conclusions not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review." **Meyer v. Astrue**, 662 F. 3d 700, 705 (4th Cir. 2011). The Appeals Council is not required by the "Social Security Act or regulations promulgated pursuant to it [to] explain its rationale for denying review." *Id.* However, the **Meyer** court suggested that in certain cases, remand is appropriate. Under the particular facts presented in **Meyer**, the Court of Appeals determined that the new evidence was not "one-sided" and that upon consideration of the record as a whole, the court could not determine whether substantial evidence supported the ALJ's denial of benefits and remanded to a fact finder to consider the probative value of the competing evidence. *Id.* at 707.

The FCE was conducted at the request of Dr. Given. The ALJ report states that the ALJ was unable to give Dr. Given's findings significant weight in part because the doctor's opinions were based primarily on the plaintiff's subjective complaints [Tr. 37]. The first step in the two-step process used by the ALJ to determine underlying impairments was to determine whether the impairments can be shown by medically acceptable clinical and laboratory diagnostic techniques [Tr. 35]. Dr. Given began treating the plaintiff in early 2009 and is the plaintiff's primary care physician [Tr. 559]. In his assessment, Dr. Given stated that the plaintiff would be unable to lift and carry more than 10 pounds, sit more than one hour at a time, stand more than one hour at a time or walk more than 30 minutes at one time [Tr. 561–62]. The evaluation ordered by Dr. Given also states that the plaintiff functions at a level below sedentary with "decreased fine motor abilities of the hands and

6

fingers" and "inability to use the hand and fingers in gripping activities" [Tr. 628–29].

The FCE findings are new. A report may be new evidence even where the information contained in the report is similar to information already introduced. **Venters v. Astrue**, 2010 WL 481246 (D. Md. Feb. 4, 2010). The findings by in the FCE directly contradict the findings of the ALJ. The ALJ found that the plaintiff has the RFC to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) with a number of limitations. Medium work activities include lifting up to 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. It also requires the ability to do light work which involves jobs that require "a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(c). The ALJ found that the plaintiff cannot perform his past work [Tr. 37–38] but can perform a significant number of jobs at the medium level with limitations [Tr. 38]. The FCE directly contradicts this, stating that "Mr. Boggs performed at the physical demand level of below sedentary based on occasional material handling lifting criteria" [Tr. 628]. Although the report is similar to findings made by Dr. Given, the report includes additional limitations. Dr. Given found that the plaintiff could use both his right and left hands for grasping and handling, arm controls, fine manipulation and fingering, although also noted that the plaintiff experienced numbness in his left hand [Tr. 565]. The ALJ report contains no limitations on handling and fingering. The FCE report found "inability to use the hand and fingers in gripping activities without increased pain [and] decreased fine motor abilities of the hands and fingers" [Tr. 628]. Because the functional capacity evaluation as to the plaintiff's RFC contradicts previous findings, it is neither duplicative nor cumulative evidence. As such,

under *Wilkins*, it is new.

The findings are also material. The ALJ did not give Dr. Given's opinion significant weight. He also found that the plaintiff was not entirely credible and accordingly did not fully accept the plaintiff's subjective statements concerning his symptoms and limitations [Tr. 36, 37]. This is a step five case, in which the ALJ determined the plaintiff cannot perform his past relevant work but that he was not disabled because he retained the capacity for work that exists in significant numbers in the national economy [Tr. 38–39]. The jobs listed by the vocational expert are based on an unskilled medium occupational base with limitations on climbing, walking on uneven surfaces, exposure to temperature extremes, wetness or humidity, environmental pollutants or hazards, stress, production line/assembly line pace or independent decision making responsibilities and limited to positions that are unskilled with routine, repetitive instructions and tasks, with no interaction with the general public and only occasional interaction with coworkers and supervisors [Tr. 34–35]. The functional capacity evaluation contradicts this finding and corroborates the plaintiff's testimony as to his limitations. It found that the plaintiff was unable to complete the grip strength test and "was observed to demonstrate . . . signs of competitive test performance during grip strength testing." As such, it creates a conflict and calls into doubt the ALJ's decision as to the plaintiff's residual functional capacity as well as his credibility. Therefore, the functional capacity evaluation is material.

Finally, the evidence relates to the period of time the ALJ evaluated even though the evaluation was not done until December 3, 2010, over three months after the ALJ's decision. There is no bright-line test based on the date of the test akin to a statute of limitations under *Wilkins*. *Camper v. Barnhart*, 2005 WL 1995446 (W.D. Va. Aug. 16,

2005) amended, 2005 WL 2105025 (W.D. Va. Aug. 29, 2005). The relation between the evaluation and the period of the ALJ's decision is clear in this case. The plaintiff's complaints of problems with dexterity, grip strength, mobility and material handling have been alleged starting in 2004 [Tr. 632] and the treatment record repeatedly indicates these issues. The evaluation was ordered by Dr. Given after the ALJ's determination, which states that Dr. Given's opinion is based on the plaintiff's subjective complaints rather than objective findings [Tr. 37]. There is no mention in the evaluation or by either party that there are any recent changes to the plaintiff's medical conditions. Therefore, the evidence relates to the period of time the ALJ evaluated.

The ALJ stated that he did not give significant weight to Dr. Given's opinion because, in part, "Dr. Given's opinions are based primarily on the claimant's subjective complaints, rather than any objective findings." [Tr. 37]. This suggests that the evidentiary gap played a role in the ALJ's decision. The new evidence corroborates the opinion of Dr. Given. The Appeals Council, in making the evidence part of the record but denying review, did not make any factual findings as to the FCE "or attempt[ ] to reconcile that evidence with the conflicting and supporting evidence in the record." **Meyer v. Astrue**, 662 F. 3d 700, 707 (4th Cir. 2011). Since assessing the probative value of evidence "is quintessentially the role of the fact finder," the case must be remanded for further fact finding. Given the evaluation completed at the direction of the plaintiff's longstanding treating physician and the contradictory hypothetical and RFC finding by the ALJ it is clear that the Commissioner needs to fully evaluate this new evidence. As such, this case will be remanded to the Commissioner to weigh and resolve conflicting evidence reflected in the functional capacity evaluation conducted by Kevin Boring.

**B.     Carpal Tunnel Syndrome**

The plaintiff's first objection to the R&R is divided into four parts.  First, the plaintiff objects to the Magistrate Judge's finding that substantial evidence supported the ALJ's failure to include carpal tunnel syndrome as a severe impairment.  Second, the plaintiff objects to the finding that the ALJ did not have to make a finding regarding the subjective symptoms involving hands and wrists.  The third part of the objection is to the finding that substantial evidence supports the final decision because medical evidence contained in the record demonstrates that the plaintiff did not experience any functional limitation from his carpal tunnel syndrome.  The final objection is to the ALJ's finding, which the plaintiff argues was decided on the basis of an incomplete, inadequate hypothetical question to the vocational expert.

In deciding whether to uphold the Commissioner's final decision, the Court considers the entire record, "including any new evidence that the Appeals Council 'specifically incorporated . . . into the administrative record.' " **Meyer v. Astrue**, 662 F. 3d 700, 704 (4th Cir. 2011) (quoting **Wilkins v. Sec'y. Dept. of Health & Human Servs.**, 953 F. 2d 93, 96 (4th Cir. 1991)).  Because the second, third, and fourth parts of the plaintiff's objections relate to the Functional Capacity Evaluation, and the case will be remanded to the Commissioner to weigh and resolve conflicting evidence, they need not be addressed here.

As to the first part of the objection, the ALJ's determination as to whether an impairment is severe is a threshold determination.  *See* 20 C.F.R. § 404.1520(c).  "The severity standard is a slight one in this Circuit." **Stemple v. Astrue**, 475 F. Supp. 2d 527, 536 (D. Md. 2007).  An impairment is not severe "only if it is a *slight abnormality* which has

such a *minimal* effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." **Evans v. Heckler**, 734 F. 2d 1012, 1014 (4th Cir. 1984) (internal citation and quotation omitted) (emphasis in original); *see also* **Albright v. Comm'r of Soc. Sec. Admin.**, 174 F. 3d 473, 474 n. 1 (4th Cir. 1999); 20 C.F.R. § 404.1521(a) ("An impairment . . . is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

The ALJ report does not specifically list the plaintiff's carpal tunnel syndrome as a severe impairment or even a non-severe impairment. The report does list "diffuse arthralgias of unclear etiology" [Tr. 22] as a severe impairment but the two conditions are not synonymous [Tr. 197]. The term arthralgia refers to pain afflicting the joints. Although arthralgia does not refer specifically to carpal tunnel syndrome, carpal tunnel syndrome is a common cause of hand and wrist pain. It was error for the ALJ to not specifically list carpal tunnel syndrome, but the error is harmless because the report goes on to specifically discusses the plaintiff's carpal tunnel syndrome and the physical impairments the plaintiff alleged as a result. The report makes reference to the plaintiff's carpal tunnel syndrome and joint issues at several points throughout the report—it specifically states that the plaintiff suffers from "severe bilateral neuropathy at the wrist" as diagnosed during nerve conduction studies in March 2010 [Tr. 31]. However it is unclear what weight, if any, the ALJ gave to this finding as there is no further mention of the nerve conduction studies. The report also lists the plaintiff's reported complaints of chronic joint pain [Tr. 28], right wrist pain [Tr. 29], numbness and shooting pain that results from gripping items such as a fork or putting his arms on the table [Tr. 30], and weak grip bilaterally. The ALJ did "not find the

11

claimant to be entirely credible and does not fully accept his subjective statements concerning his symptoms and limitations" [Tr. 36]. As such, the ALJ's failure to list carpal tunnel syndrome among the severe impairments is a harmless error. The additional objections will be addressed by the Commissioner on remand

### C. Vocational Expert Testimony

The second objection is to the R&R's findings that substantial evidence supports the ALJ's reliance on the vocational expert's ("VE") testimony. The plaintiff asserts that the jobs provided by the VE are inconsistent with the ALJ's restrictions regarding environmental conditions. This Court agrees with the R&R that the argument is without merit.

Where there is a demonstrated impairment, the Commissioner must produce a VE to testify that the individual retains the ability to perform specific jobs which exist in the national economy. **Grant v. Schweiker**, 699 F. 2d 189, 192 (4th Cir. 1983). The testimony must be based on all of the evidence of record and in response to a proper hypothetical question that fairly sets out all of a claimant's impairments. **Walker v. Bowen**, 889 F. 2d 47, 50 (4th Cir. 1989). The Commissioner may not rely upon the answer to a hypothetical question if the hypothesis fails to fit the facts. **Hincher v. Barnhart**, 362 F. Supp. 2d 706, 712 (W.D. Va. 2005). As required by Social Security Ruling 00-4p (December 4, 2000), the ALJ asked if there was a conflict between the VE's testimony and the information contained in the DOT. [Tr. 779–80]. The vocational expert testified that there was not [Tr. 780]. There is no affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses and because the plaintiff did not bring the vocational expert's mistake to the ALJ's attention, the ALJ did not need to explain how the conflict was

resolved. *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). Accordingly, the ALJ complied with the requirements of SSR 00–4p, and the plaintiff's argument must fail.

### D. Medical Expert

The third objection claims it was abuse of discretion by the ALJ in failing to call a Medical Expert because the plaintiff had a combination of exotic medical impairments, the record contained medical terms and laboratory findings which were out of the ordinary, and the ALJ demonstrated a lack of understanding of carpel tunnel syndrome. This Court agrees with the magistrate judge's finding that the ALJ did not abuse his discretion by not calling a medical expert.

The primary function of a medical expert is to explain medical terms and the findings in medical reports in more complex cases in terms that the administrative law judge, who is not a medical professional, may understand. *Richardson v. Perales*, 402 U.S. 389, 408 (1972). As is noted in the plaintiff's objections, it is within the administrative law judge's discretion whether to seek the assistance of a medical expert. HALLEX I-2-5-32 (Sept. 28, 2005). An administrative law judge abuses his discretion only when the testimony of a medical expert is "required for the discharge of the ALJ's duty to conduct a full inquiry into the claimant's allegations. *See* 20 C.F.R. § 416.1444." *Mitchell-Henderson v. Astrue*, 2009 WL 485489 (S.D. Ohio Feb. 26, 2009) (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1467–68 (5th Cir.1989)). Upon a review of the record as a whole, the Court concludes that the ALJ's decision to not have a medical expert at the hearing is supported by substantial evidence and the plaintiff's objection on this issue is overruled.

**IV.	Conclusion**

Based on the above, it is

**ORDERED** that Magistrate Judge Joel's R&R **[Doc. 16]** be, and the same hereby is, **ADOPTED IN PART**.  Accordingly, it is

**ORDERED** that the defendant's Motion for Summary Judgment **[Doc. 14]** shall be, and the same hereby is, **DENIED**.  It is further

**ORDERED** that the plaintiff's Motion for Summary Judgment **[Doc. 11]** shall be, and the same hereby is, **GRANTED IN PART**.  It is further

**ORDERED** that the decision for the defendant is **VACATED** and **REMANDED** to the Commissioner of Social Security for further consideration in accordance with the report and recommendation as clarified by this order of remand, and the case is **RETIRED** from the docket of this Court.

The Clerk of Court is directed to enter a separate judgment order and to send a copy of this Order to all counsel of record.

**DATED**: November 12, 2012.

JOHN PRESTON BAILEY
CHIEF UNITED STATES DISTRICT JUDGE